IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CIVIL ACTION NO. 2:13cv230-WC |
| THE INDUSTRIAL DEVELOPMENT BOARD OF THE CITY OF MONTGOMERY, ) ) ) ) | |
| Defendant. ) | |

# MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

In this action brought under the Declaratory Judgment Act of 1984, 28 U.S.C. § 2201(a), Plaintiff Landmark American Insurance Company ("Landmark") seeks a declaration that it has no duty to defend Defendant The Industrial Development Board of the City of Montgomery ("IDB") in two consolidated actions pending in the Circuit Court of Montgomery County, Alabama.  Compl. (Doc. 1).  Jurisdiction is proper under 28 U.S.C. § 1332 (diversity).  Before the court is Landmark's Motion for Summary Judgment (Doc. 27) and Brief in Support (Doc. 28).  IDB has filed a Response (Doc. 30) and Brief in Support (Doc. 31), to which Landmark has filed a Reply (Doc. 38).

Upon consideration of the Motion for Summary Judgment (Doc. 27), the pleadings of the parties, and the evidentiary materials filed in support thereof, and for the reasons that follow, the court finds that the Motion is due to be granted.

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion[,]" and alerting the court to portions of the record which support the motion. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323

---

[1] On December 1, 2010, amendments to Rule 56 became effective. The instant motion was filed on December 3, 2010. The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment-motions and [is] . . . *not intended to change the summary-judgment standard or burdens.*" *Farmers Ins. Exchange v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011) (internal quotations omitted) (emphasis in original). Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law construing and applying" the standard now articulated in Rule 56(a). Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments. Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

(1986).  However, once the movant has satisfied this burden, the non-movant is then similarly required to cite to portions of the record which show the existence of a material factual dispute.  *Id.* at 324.  In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the non-movant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255.  After the non-moving party has responded to the motion for

summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

### III.   STATEMENT OF UNDISPUTED FACTS

The parties developed a set of uncontested facts which the court has carefully considered along with all of the documents submitted in support of, and in opposition to, the Motion for Summary Judgment. The submissions of the parties establish the following relevant facts, s*ee* Fed. R. Civ. P. 56(e)(2):

On May 28, 2004, Helen Kathryn Wheeler and others ("plaintiff landowners") filed suit against IDB and others in the Circuit Court of Montgomery County, Alabama, styled *Helen Kathryn Wheeler, et al. v. Randall L. George, et al*., Case No. CV-04-1434 ("Wheeler Action"). On December 15, 2004, George E. Russell and others ("plaintiff landowners") filed suit against IDB and others in the Circuit Court of Montgomery County, Alabama, styled *George E. Russell, et al. v. The Industrial Development Board of the City of Montgomery*, Case No. CV-2004-3282 ("Russell Action"). On July 12, 2005, Price McLemore and others ("plaintiff landowners") filed suit against IDB and others in the Circuit Court of Montgomery County, Alabama, styled *Price McLemore, et al. v. The Industrial Development Board of the City of Montgomery*, Case No. CV-2005-1728 ("McLemore Action"). In the Wheeler Action, the Russell Action, and the McLemore Action, the plaintiff landowners asserted claims against IDB arising from option contracts between them and IDB. IDB had entered into option contracts with the

plaintiff landowners for the purpose of procuring land for the potential site of Hyundai's automobile manufacturing site. Under the option contracts, IDB acquired the right to purchase land during a specified time period in exchange for price guarantees granted to the plaintiff landowners. In the Russell Action and the McLemore Action, the plaintiff landowners have asserted to date only breach of contract claims. *See Compl.*, Ex. A, Ex. B.

Landmark issued Directors and Officers Liability and Company Reimbursement Policy No. LHP613934 ("Landmark Policy") to IDB for the Policy Period of October 9, 2003 to August 12, 2004.  IDB was an Insured Person and an Insured Organization under the Landmark Policy.  The Landmark Policy affords coverage for claims made during the policy period arising from negligent acts, errors, or omissions, subject to all terms, conditions, and exclusions, contained in the policy.  One of the exclusions in the Landmark Policy is the Exclusion contained in Section 3. (B)(11), which was added via Endorsement 7, ("Exclusion B(11)") that provides as follows:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Insured Persons:
>
>> arising out of or based upon any actual or alleged liability of the Insured Organization assumed or asserted under the terms, conditions or warranties of any contract or agreement; provided however, that this Exclusion (11) will not apply to otherwise covered Claims for Employment Practices Wrongful Acts.

Compl., Ex. C (Doc. 1-3, pp. 13-16, 23-29).

IDB made demand on Landmark for coverage under the Landmark Policy for the claims asserted against IDB in the Wheeler Action, the Russell Action, and the

McLemore Action. Landmark denied coverage for the Wheeler Action, the Russell Action, and the McLemore Action based in part upon Exclusion (B)(11). On September 8, 2005, IDB filed suit against Landmark and others in the Circuit Court of Montgomery County, Alabama, styled *The Industrial Development Board of the City of Montgomery, et al. v. Landmark American Insurance Company, et al.*, Case No. CV-05-2325 ("IDB Action"). IDB alleged breach of contract, bad faith, fraud, and other claims against Landmark.

On October 11, 2005, the Russell Action and the McLemore Action were consolidated by the Circuit Court of Montgomery County, Alabama ("Russell/McLemore Action"). While the IDB Action was pending, the Wheeler Action against IDB was dismissed on summary judgment, which was affirmed on appeal by the Supreme Court of Alabama. *Wheeler v. George*, 39 So. 3d 1061, 1090-91 (Ala. 2009). In the Russell/McLemore Action, IDB's motion for summary judgment was denied, but the Circuit Court of Montgomery County, Alabama granted IDB permission to appeal the denial to the Supreme Court of Alabama.

On or about March 15, 2011, IDB settled with all of the parties in the IDB Action except Turner Insurance and Bonding, Inc. As part of the settlement, IDB and Landmark agreed that, should the Russell/McLemore Action be remanded by the Supreme Court of Alabama to the Circuit Court of Montgomery, Alabama for further proceedings, Landmark would be obligated to defend IDB in the remanded Russell/McLemore Action under a reservation of rights as to both defense and indemnity obligations, unless or until

relieved of these obligations by a declaratory judgment. Specifically, the parties agreed that Landmark would be relieved of any defense obligation by either (i) a final appealable judgment by a trial court of competent jurisdiction declaring that Landmark has no obligation to defend under the Landmark Policy, or (ii) a decision by an appellate court of competent jurisdiction that Landmark has no obligation to defend under the Landmark Policy, whichever first shall occur.

On March 29, 2013, the Supreme Court of Alabama affirmed the denial of IDB's motion for summary judgment in the Russell/McLemore Action and thereby remanded the Russell/McLemore Action to the Circuit Court of Montgomery County, Alabama for further proceedings.  As a result, Landmark agreed to provide a defense to IDB in relation to the remanded Russell/McLemore Action under a reservation of rights as to both defense and indemnity. While obligated to provide such a defense, Landmark is also permitted to file this action for a declaratory judgment as to Landmark's continuing coverage obligations. *Compl.*, Ex. D (Agreement between IDB and Landmark). On June 18, 2013, the court entered an order (Doc. 23) dismissing, without prejudice, Landmark's claim for a declaration that it has no duty to indemnify IDB in the state court actions. Landmark's sole remaining claim seeks a declaration that it has no duty to defend IDB in the state court actions.

### IV. DISCUSSION

Landmark moves for summary judgment "[b]ased on the unambiguous language of the Landmark Policy, specifically the Breach of Contract exclusion, Landmark does

Case 2:13-cv-00230-WC Document 42 Filed 09/09/13 Page 8 of 15

not have a duty to defend IDB against the claims asserted in the remanded Russell/McLemore Action and is entitled to be relieved of all defense obligations." Pl.'s Br. (Doc. 28) at 6. Specifically, Landmark points to Exclusion (B)(11) of the Landmark Policy, which states as follows:

> (B) The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the insured Persons:
>
> (11) arising out of or based upon any actual or alleged liability of the Insured Organization assumed or asserted under the terms, conditions or warranties of any contract or agreement; provided however, that this Exclusion (11) will not apply to otherwise covered Claims for Employment Practices Wrongful Acts.

Compl., Ex. C (Doc. 1-3) at 13-16, 23-29. Landmark asserts that the sole cause of action in the Russell/McLemore Action is for breach of contract and that incurring legal fees and expenses on IDB's behalf would be a "payment for Loss," which is excluded in (B)(11).

IDB makes four arguments for coverage under the Landmark Policy: (1) "Exclusion (B)(11) does not apply because no liability was 'assumed or asserted' under the option contracts." Def.'s Br. (Doc. 31) at 11; (2) "Even if the Court were to adopt Landmark's interpretation of Exclusion B(11), at a minimum the exclusion must be considered ambiguous and be construed against Landmark as the drafter." *Id*. at 19; (3) "The IDB had a reasonable expectation of coverage under the Policy." *Id*. at 12; and (4) "Public policy mandates a ruling that the Landmark Policy provides coverage for the IDB." *Id*. at 24.

### A.     *Exclusion (B)(11).*

In determining whether the exclusion applies the court will also determine whether the exclusion is ambiguous.  It is uncontested that the sole claims in the underlying Russell/McLemore Action are for breach of contract.  Def.'s Br. (Doc. 31) at 3; Pl.'s Br. (Doc. 28) at 3.  The question then, is whether coverage under the Landmark Policy for those breach of contract claims is excluded by (B)(11) of the Landmark Policy.  "Insurance contracts must be enforced as written, and judicial interpretation of such contracts cannot defeat their express provisions, including exclusions." *Miller v. Allstate Ins. Companies*, 896 So. 2d 499, 501 (Ala. Civ. App. 2004).  Certainly under a straight forward reading of the contract, it would appear that the duty to defend against the breach of contract actions would be excluded.  The contract expressly excludes a "payment for Loss," which would include "Defense Expenses,"[2] "arising out of or based upon any actual or alleged liability . . . of any contract or agreement . . . ." Compl., Ex. C (Doc. 1-3) at 13-16, 23-29.

IDB argues that this simplified reading ignores the important "assumed or asserted" terms of the exclusion.  That is, "[a] careful reading of the exclusion reveals that it only excludes coverage for liability of the Insured Organization **assumed or asserted** under the terms of a contract." Pl.'s Br. (Doc. 31) at 12 (emphasis in original).

---

[2] "Loss" is defined in the Landmark Policy as "damages, settlements, judgments, and Defense Expenses, including punitive and exemplary damages . . . which an Insured Person is legally obligated to pay as a result of a Claim." Compl. Ex. C (Doc. 1-3) p. 13.

"Defense Expenses" is defined as "reasonable legal fees and expenses, incurred, with the written consent of the Insurer, by an Insured Person in defense of a Claim, including appeal . . ." *Id*. at 24.

Thus, IDB points the court to the option contracts in the Russell/McLemore Action and states that "IDB neither assumed nor asserted any liability for the price guarantees now being litigated in Circuit Court." *Id.* IDB asserts that the Russell/McLemore "plaintiffs are suing the IDB based on representations concerning price guarantees in the option contracts" and not based on an assumption of liability from the contracts. *Id.* at 14. In support, IDB points this court to several cases for the proposition that "Courts addressing policy exclusions which speak to 'assumed' liability under a contract have found the exclusions do not apply where no liability is assumed." *Id.* at 13.

The problem for IDB is that these cases only address the issue of "assumed" liability and not "asserted." *See, e.g., Townsend Ford, Inc. v. Auto-Owners Ins,* 656 So. 2d 361, 364 (Ala. 1995) (finding that an alleged warranty was not an assumption of liability); *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 79 (Wis. 2004) ("We conclude that the contractually-assumed liability exclusion applies where the insured has contractually assumed the liability of a third party, as in an indemnification or hold harmless agreement; it does not operate to exclude coverage for any and all liabilities to which the insured is exposed under the terms of the contracts it makes generally."); *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214 (5th Cir. 2005) ("[C]ourts have consistently interpreted the phrase 'liability assumed by the insured under any contract' to apply only to indemnification and hold-harmless agreements, whereby the insured agrees to 'assume' the tort liability of another. This phrase does not refer to the insured's breaches of its own contracts.").

Thus, even were to the court to agree with IDB's position that the term 'assumption" in (B)(11) "contemplates an express contractual assumption of another's potential liability by an agreement to indemnify or hold another harmless for an obligation not otherwise imposed by law," *Smithway Motor Xpress, Inc. v. Liberty Mut. Ins. Co.*, 484 N.W.2d 192 (Iowa 1992), the exclusion still applies to losses "arising out of or based upon any actual or alleged liability [of IDB] . . . **asserted** under the terms, conditions or warranties of any contract or agreement."

The IDB's reading of Exclusion (B)(11), that it applies only to indemnity situations, is too narrow and ignores the express language of the exclusion. Exclusion (B)(11) excludes any payment in connection with "any claim" made against IDB arising or based upon "any actual or alleged liability" of IDB asserted under the terms, conditions or warranties of "any contract or agreement." The terms of the exclusion are broad and the court cannot read them in the narrow manner suggested by IDB. Indeed, the "duty to defend is [] broader than its duty to indemnify." *Hermitage Ins. Co. v. Champion*, 2010 WL 1711049, at *3 (M.D. Ala. Apr. 27, 2010) (citing *Universal Underwriters Ins. Co. v. Youngblood,* 549 So. 2d 76, 78 (Ala. 1989)).

Furthermore, the court does not find this exclusion to be ambiguous. In setting forth its arguments, IDB fails to reasonably address the "asserted" language of the Exclusion.[3] Additionally, the court cannot agree that if the underlying claims are based

---

[3] For example, on page 18 of its brief, IDB sates: "In other words, the IDB was sued for <u>incurred</u> liability under the option contracts, not <u>assumed</u> or <u>asserted</u> liability in an indemnity situation where the IDB assumed liability to a third party under a separate agreement." In order to suggest the exclusion applies only to indemnity agreements, IDB makes the assertion, but then only contrasts it to an indemnity

11

on a representation of the price of land, rather than a breach of the contract itself, the exclusion does not apply. The exclusion expressly contemplates claims arising out of or based on a contract. Tracking IDB's argument, those representations have arisen from or are based on the contracts. Indeed, as stated above, the claims in the Russell/McLemore Action are for breach of contract.

The court "must follow the plain language of the contract." *Pub. Bldg. Auth. of City of Huntsville v. St. Paul Fire & Pub. Bldg. Auth. of City of Huntsville v. St. Paul Fire & Marine Ins. Co.*, 80 So. 3d 171, 180 (Ala. 2010). Moreover, the court "must interpret insurance policies to give meaning and effect, if possible, to every word and phrase in the contract and cannot adopt a construction which neutralizes any provision." *Royal Ins. Co. of Am. v. Thomas*, 879 So. 2d 1144, 1155 (Ala. 2003). In so doing, the court finds that Exclusion (B)(11) does apply and that it is not ambiguous. "The court, thus, finds that it must enforce it as written, according to its plain meaning without resorting to the rules of construction." *Western World Ins. Co. v. Resurrection Catholic Mission of the South, Inc.*, 2006 WL 2079990, at *7 (M.D. Ala. July 25, 2006); *See also Federated Mut. Ins. Co. v. Abston Petroleum, Inc.*, 967 So. 2d 705, 710 (Ala. 2007) ("If the clause is unambiguous, then this Court must enforce the terms of the insurance policy as written."); *Altiere v. Blue Cross & Blue Shield of Alabama*, 551 So. 2d 290, 293 (Ala. 1989) ("[I]f there is no ambiguity, courts must enforce insurance contracts as written and

---

situation where it has "assumed liability." In other words, even in its own arguments, IDB fails to account for the purpose of the language of "or asserted."

cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties.").

### B.     *IDB's reasonable expectation of coverage.*

IDB asserts that it "reasonably expected to be covered for its contractual actions related to the Hyundai Project," and that under the doctrine of reasonable expectations, the court should not allow Landmark to invoke Exclusion B(11). Def.'s Br. (Doc. 31) at 21. Specifically, IDB asserts that it asked its insurance agent "to procure a [Directors and Officers] insurance policy that would give additional protection for its operations and involvement in the Hyundai Project because the IDB does not enjoy immunity from lawsuits as the City of Montgomery and the State of Alabama do." *Id*. at 7. IDB argues that its agent, the broker, and the underwriter all knew of IDB's intentions in securing a Directors and Officers liability policy. Thus, IDB claims that it should be entitled to the coverage it reasonably expected.

IDB in its Response and Landmark in its Reply, spend a bit of time asserting then arguing over which agent or broker or underwriter knew what and when regarding IDB's intent. Fortunately, the court need not enter that quagmire. Rather, because the terms of the exclusion were not ambiguous, the doctrine of reasonable expectation does not apply. As the Alabama Supreme Court explained, "[o]ther courts have limited the use of the doctrine of reasonable expectations to situations in which an insurance policy is ambiguous . . . Such a limit on the doctrine of reasonable expectations is necessary. Otherwise, this Court would be faced with the strong temptation to substitute its notion of

equity for the unambiguous terms of a contract and the doctrine could be used to invalidate every policy exclusion." *Federated Mut. Ins. Co.,* 967 So. 2d at 713-15 (internal citations omitted). *See also, Finger v. State Farm Fire & Cas. Ins. Co.*, 459 F. App'x 828, at *3 n.2 (11th Cir. 2012) (stating that Plaintiff's expectation of coverage "does not provide a basis of coverage given the policy's unambiguous language."). "Stated differently, an insured's expectations are necessarily 'limited by the unambiguous terms of' an exclusion, such that expectations of coverage running counter to an unambiguous exclusion 'could not be objectively reasonable,' as a matter of law." *Nautilus Ins. Co. v. Mobile Area Mardi Gras Ass'n, Inc.*, 2010 WL 4269184, at *5 (S.D. Ala. Oct. 27 2010) (quoting *Federated Mut. Ins. Co.,* 967 So. 2d at 715).

### C. Public Policy

IDB requests that even if the court finds the exclusion enforceable, it should still mandate that Landmark provide coverage for IDB in the interest of public policy. Def.'s Br. (Doc. 31) at 24. Under Alabama law, a court "'has limited authority to deal with the enforceability of contract terms. It can nullify or reform a contract on the basis of fraud; it can also nullify or reform a contract to eliminate any unconscionable provisions or terms that violate public policy.'" *Edwards v. Allied Home Mortg. Capital Corp.*, 962 So. 2d 194, 211 (Ala. 2007) (quoting *Ex parte Thicklin,* 824 So.2d 723, 732 (Ala. 2002)).

The court does not find that the terms of the contract are unconscionable or that they violate public policy. Both parties are sophisticated entities. IDB's successful endeavors that may have greatly benefited the Montgomery area and State of Alabama at

14

large are evidence of its sophistication, not a reason to invalidate the exclusion. This was a negotiated contract with unambiguous terms and the court will enforce it as written.

## V. CONCLUSION

Accordingly, and for the reasons stated above, the Motion for Summary Judgment (Doc. 27) is GRANTED.

Done this 9th day of September, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE